Geiger, J.
This is an action in which the plaintiff seeks partition of certain real estate described in the petition. He alleges that he is seized in fee simple as heir at law of John Mills, deceased, of the undivided one-eighteenth part of the real estate, and that certain of the defendants are seized in fee simple of certain other proportions of said real estate.
To this petition an answer is filed by Clara J. Mills in which she denies that the plaintiff, or any of her co-defendants, are entitled to any part of the real estate as the heirs of John Mills, and she claims to be entitled in fee simple to the entire retal estate as the widow and heir at law of John Mills, under the third item of the will of Thomas Mills.
After answer was filed by Clara J. Mills she deceased, and James E. and Iva Cnltice claim the entire estate under the will of 'Clara J. Mills.
The issues thus raised call for an examination of the will of Thomas Mills, who died in 1866, leaving surviving him several children and grandchildren, among whom was his son John Mills, who died in 1915, childless, leaving Clara J. Mills his widow.
*503 The pertinent portions of the will of Thomas Mills may be briefly stated as follows:
By Item 1 of said will he bequeathed to his son James during his natural life, and to his heirs at his death, certain real estate, “immediately north of the lands hereafter devised to Sibbia’s heirs.”
By Item 2 he bequeathed to his daughter Nancy during her natural life, and to her heirs, certain real estate. Item 3 disposes of the land now sought to be partitioned in this ease, as follows:
“I give and bequeath to my son John during his natural life, and to his heirs, the old home farm in Section 23 and 29, T.5, R. 8, and all my personal property not otherwise disposed of.”
By Item 4 he bequeathes to his daughter Sibbia’s heirs the balance of certain real estate.
By Item 9 he bequeathes his lands in Kansas equally, “to my son James and daughter Sibbia’s heirs, Hannah and Letty.”
The decedent executed a codicil on the 26th of October, 1865, reciting the fact that two of his children, Nancy and Letty, both receiving legacies in his will, have deceased, and other changes in my family seem to make this codicil and amendment to my before-mentioned will necessary.”
Item 3 of said codicil is as follows:
“That the other four-fifths of said farm be divided equally between my children, James, Hannah, Sibbia and John, or their heirs, having by deed dated October 6, 1865, given to my daughter Letty’s heirs, William James, Mary Lavinia, John Henry and Martha Jane Inkow, my Kansas lands in lieu of their interest in this last mentioned farm.”
At the time of the making of this will and codicil John, mentioned in Item 3, was unmarried, but subsequently married Clara J. Mills, who survived him.
The question is whether under this will Clara J. Mills, the widow of John Mills, inherits said real estate as heir, or whether the words, “to his heirs,” in Item 3 of the will, were used by the testator to designate the children of John. If the word *504 “heirs” in Item 3 is to be given its technical meaning, then Clara J. Mills was the heir, of John Mills, and took the real estate upon his death.
If by the word “heirs,” the testator meant the children of John, he having died childless, the estate passed upon his death to the children of his brothers and sisters, the grandchildren of the original testator, Thomas Mills.
In the construction of a will it is well settled that the intention of the testator as gathered from the whole will must control. It is also an established rule that words in a will are to be construed-according to their ordinary and legal significance, unless it is manifest from the context, or other provisions in the will, that the testator has used them in a different sense, and unless such different sense is clearly apparent.
Words of inheritance used to vest the estate, standing alone, are to receive that construction and interpretation which a long series of decisions has attached to them unless it is very certain that they were used in a different sense, and courts should never depart from the established technical meaning of the word “heir” in any ease where from a consideration of all the circumstances a doubt arises as to what the testator meant. Carter v. Reddish, 32 O. S., 1; Collins v. Collins, 40 O. S., 353; St. Marks Lodge v. Darrow, 16 O. D.(N.P.), 120; Halley v. Hengstler, 3 C.C.(N.S.), 161; McDaniel v. Hays, 6 N.P. (N.S.), 435; King v. Beck, 15 O., 559.
It must be concluded that the word “heirs” is to be used in its strict technical sense, unless it clearly, manifestly and very certainly appears that the testator used it in a different sense.
“But the term ‘heirs’ when used in a will is flexible, and should be so construed as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the provisions of the will.” Jones v. Lloyd, 33 O. S., 572.
Judge Sahuek, in delivering the opinion in the case of Durfee v. McNeil, 58 O. S., 238, says, in speaking of the word “heirs”: that it would be unprofitable to analyize or even to cite the numerous oases in which the term has been held to *505 have been used in its general sense to designate any one capable of inheriting, or in its limited sense to designate children, as the testator’s intention may appear from the scheme, and all the provisions of his will.
Without citing further cases at this time, we will consider the will and codicil to determine, if possible, the sense in which the testator used the word “heirs,” where it appears in said instruments, as set out above.
An examination of the will and codicil will disclose first, that the testator, in Items 1, 2 and 3 devised real estate to each of his three children therein named, during his natural life, and to his heirs.
It next appears that Sibbia’s children are spoken of as her “heirs,” Sibbia being dead at the time, it is true this was the correct designation of her children. Sibbia’s “heirs” are spoken of in Items 4 and 9 of the will.
By the codicil it appears that the death of his two daughters, Nancy and Letty, and “other changes in my family,” called for the making of the codicil. This indicates that the mind of the testator was expressly and properly directed to his “family.”
In Item 3 of the codicil the bequest is made to his children, James, Hannah, Sibbia and John, or their heirs. Sibbia being dead, the testator appears to have intended to designate her children by the term, “or her heirs,” as he had done in other portions of the will.
Further in said item he enumerates by name Letty’s heirs, who were, as a matter of fact, Letty’s children.
From the above recital of the will are we able to determine the intention of the testator in the use of the word “heirs”? It is manifest that in certain portions of the will he used it to designate the children of his deceased'children.
The ease of Bunnell v. Evans, 26 O. S., 409, is an interesting case, and a strong one on behalf of plaintiff. It calls attention to the fact that as far as the real estate devised by Item 3 to John for life is concerned, there can be no heirs of John in the technical sense of the word, as he had only a life estate that would *506 terminate at his death. Whoever takes the estate under this or like items of the will, takes it not as heir of the life tenant, but as devisee under the will.
Certain of the defendants claim that they are clearly entitled to this estate under a decision of the circuit court in the ease of Miller v. Miller, 9 C.C.(N.S.), 242, affirmed by the Supreme Court.
In this case it is held, in a provision of a will similar to the one under examination, that upon the death of the son the wife takes as heir, where there is nothing in the will tending to show that the testator used the words, “lawful heirs,” in a sense different from their strict technical import.
It will be observed in the will there under examination, that the testator in the second item devised to his son Howard, and at his death to his children, and in the third item devises to his son Richard, and at his death to his children, and by the sixth item he devises to his son Peter during his life, and at his death to his “lawful heirs.”
This difference in the several bequests might well indicate that the testator intended to make a difference in the final disposition of the estate after the termination of the several life estates. The court, in this case, says:
“If, however, there is nothing in the will or the surrounding circumstances showing that the testator used the words in a different sense from their strict technical significance, then that significance must be given them.”
But it is apparent that the testator used the word “heirs” in its technical sense, and not as meaning children.
The case of Reif v. Ulmer, 9 N.P.(N.S.), 234, holds that in the. case under consideration the words “lawful heirs” are used in their strict and technical sense, but both the common pleas court, and the cricuit court in affirming the judgment of the common pleas court, pointed out a number of things in the will that indicated that the testator intended to use the words in the technical sense, and not as meaning children.
In the case of Weston v. Weston, 38 O. S., 473, the provision of the will is, “in case my said child should die without issue *507 her surviving, then all the property so devised shall pass to and vest in my heirs at law. ’ ’ The testator died leaving surviving the child, and also his wife, a brother and two sisters, who survived the child, who died without issue.
It was held that upon the death of the child the widow of the testator succeeded to the property as heir at law of the testator.
Judge Mellvaine, delivering the opinion of the court, stated that the report of the case was made because of the suggestion that the decision was not in harmony with Jones v. Lloyd, supra.
The first difference between the case of Weston v. Weston and and the case at bar, is that the widow, who inherited as the heir at law of the testator, is the widow of the testator, and not the widow of the testator’s child, as in the case at bar.
The court goes to some length in pointing out how the estate would have passed had the testator died intestate and without children, and concludes that it was improbable, having a presumed knowledge of the laws of descent and distribution, he had intended to designate his brothers and sisters as “legal heirs,” to the exclusion of his wife.
The court concurs in .the principle laid down in the ease of Jones v. Lloyd, but says this principle does not conflict with the well established rule of construction, that technical words used in a will should have their strict technical meaning, unless it appears that the testator used them in some other or secondary way.
The conclusion in reference to the ease of Weston v. Weston is that it falls within the well defined principle laid down by the courts, that the intention of the testator as disclosed by the entire will should control, and it does not seem to the court that the circumstances surrounding the testator and the terms of the will itself were such as to make this case controlling in the case at bar.
A ease cited with justifiable assurance by counsel is that of Smith et al v. Hunter, Trustee, 86 O. S., 106, where it is held that the rule that in the interpretation of a will the testator must have been presumed to have meant what he said, required *508 that the devise of a remainder to the heirs at law of a beneficiary for life be regarded as including an adopted child of the beneficiary, although there was not, when the will was executed, any statute for the adoption of children.
While it is true, as announced in this case, that the testator must be presumed to have meant what he said, it is equally true that in order to determine what he really said we must ascertain the language in which he spoke. The presumption is that he had knowledge of the meaning of the technical terms, but if from the whole context of the will we ascertain that he did not, as a matter of fact, speak a technical language but used the words in a different sense, we must give to the words used the meaning he intended.
The case nearest on all fours to the ease at bar is probably the case of Stewart v. Powers, 9 C. C., 143.
In that ease the testator devised the use of a farm to a married daughter for her life, with remainder in fee to her heirs. The daughter died leaving her husband, but without living issue. In other items of the will, the testator bounded other lands to other of his children by lands described as belonging to the “heirs” of certain named persons. The husband of the daughter was not named or referred to in the will.
The court holds it was proper to show that the testator used the word “heirs” in the sense of children by showing that where used in describing the bounds of the property it was intended thereby to designate certain persons known to be the children of the testator’s neighbor.
It was held that under such circumstances it is to be presumed that the testator used the word “heirs” in the sense of children, and intended to exclude the son-in-law, and that the devise of the remainder having failed, the estate passed to the heirs of the testator.
In the case of Bunnell v. Evans, 26 O. S., 409, the court holds that:
“Where a testator made a devise to his son John, through his natural life, and then to his heirs, and in another part of the will used the word ‘heirs’ in the sense of children, the son took *509 a life estate only, with remainder to his children, and not to his heirs generally, and that upon his death without issue the devise in remainder failed and the estate reverted to the heirs of the testator.”
An examination of the will, in the opinion of the court, discloses the fact that the testator, Thomas Mills, in using the word “heirs,” as the same appears in Item 3, used it, not in its strict technical sense, but to designate the children of his son John, and therefore upon the death of his son John without children, the estate does not pass to John’s widow, but the devise in remainder fails, and the estate passes to the children of the brothers and sisters of John, who are of the blood of the testator.
The court therefore holds that Clara J. Mills did not inherit under Item 3 of the will.
The question is now presented as to the time at which the fee in the estate vested- — whether at the death of Thomas or John— this question controlling the division of the estate.
If the estate vested at the death of Thomas it would be divided into four portions, and the several nieces and nephews of John would take the portions belonging to their respective parents.
If the estate vested at the death of John, it would be divided into fourteen portions, and each one of the grandchildren of Thomas then living would take an equal portion.
The court is of the opinion that the reversion in fee descended to and vested in the heirs of the testator living at his death, subject to divest in the event that the devisee for life should die leaving children.
See Gilpin v. Williams, 25 O. S., 283; Ewers v. Follin, 9 O. S., 327; Dutoit v. Doyle, 16 O. S., 400.
It being so, distribution of the estate would be controlled by Section 8580, General Code, et seq.